UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ABRAM A.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00422<br><br>Magistrate Judge Daphne A. Oberg |

Abram A.[1] brought this action for judicial review of the denial of his application for disability insurance benefits and supplemental security income.[2] The administrative law judge (ALJ) who addressed his application determined he did not qualify as disabled.[3] Mr. A. argues the ALJ erred by: 1) treating his assessed residual functional capacity as "light" rather than "sedentary" under the medical-vocational grids, and 2) failing to consider his "borderline age."[4] As explained below, the ALJ applied the correct legal

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–31, Doc. No. 10.)

[4] (*See* Opening Br., Doc. No. 11 at 1.) Because the opening brief contains inconsistent page numbering, citations to this document reference the CM/ECF pagination.

standards, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[5]

**STANDARD OF REVIEW**

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

To determine if a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) he has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) he has the residual functional capacity to perform past relevant work; and

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] But at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. A. applied for disability insurance benefits and supplemental security income.[18] After an administrative hearing,[19] the ALJ issued a decision, finding Mr. A. not disabled and denying benefits.[20]

At step two of the sequential evaluation, the ALJ found Mr. A. had the severe impairments of "degenerative disc disease of the lumbar spine with spondylosis; Raynaud's syndrome; degenerative joint disease of knees; seasonal asthma; and mental impairments including major depressive disorder, generalized anxiety disorder, adjustment disorder with mixed depression and anxiety."[21] At step three, the ALJ

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 327–44.)

[19] (Tr. 38–71.)

[20] (Tr. 17–31.)

[21] (Tr. 20.)

concluded Mr. A.'s impairments did not meet or medically equal an impairment listing.[22] The ALJ then found Mr. A. had the residual functional capacity (RFC) to perform "light work" with additional limitations:

> [H]e can be on his feet up to 4 hours per 8 hour shift; he can occasionally perform all postural activities; he can frequently reach and handle; he can have no concentrated exposure to extreme cold or to pulmonary irritants such as heavy smoke or fumes; he can understand, remember, and carry out simple instructions (i.e., instructions typical of tasks that can normally be learned in 30 days or less); and he can have occasional contact with the public.[23]

At step four, based on this RFC and the testimony of a vocational expert, the ALJ found Mr. A. unable to perform past work.[24] But at step five, the ALJ found Mr. A. capable of other jobs in the national economy.[25] Accordingly, the ALJ found Mr. A. not disabled and denied his claims.[26] This decision became final when the Appeals Council denied Mr. A.'s request for review.[27]

## ANALYSIS

Mr. A. makes two claims of error relating to the ALJ's step-five findings. First, he argues the ALJ should have treated his assessed RFC as reflecting a "sedentary" rather

---

[22] (Tr. 20–22.)

[23] (Tr. 22.)

[24] (Tr. 29.)

[25] (Tr. 29–30.)

[26] (Tr. 30–31.)

[27] (Tr. 1–3.)

than "light" exertional level, for purposes of applying the medical-vocational grids.[28] Second, he argues the ALJ should have considered him to be "borderline age" under the grids.[29] As explained below, Mr. A. has not demonstrated error.

A. <u>Medical-Vocational Guidelines</u>

The medical-vocational guidelines, commonly called the "grids," mandate a finding of "disabled" or "not disabled" at step five if a claimant's RFC and vocational factors (age, education, and work experience) match a grid rule.[30] If, however, a claimant's RFC and vocational factors do not match a grid rule, the grids are merely used as a framework for decisionmaking, without mandating a result.[31] In these circumstances, the ALJ may call a vocational expert to testify about whether a

---

[28] (Opening Br., Doc. No. 11 at 11–21.)

[29] (*Id.* at 21–25.)

[30] *See* 20 C.F.R. §§ 404.1569, 416.969; *see also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids.").

[31] *See* 20 C.F.R. §§ 404.1569, 416.969 ("[W]e do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule."); SSR 83-11, 1983 SSR LEXIS 31, at *2 (Jan. 1, 1983) ("Where the criteria of any rule are not met, a decision is not directed . . . . In these cases, the rules are used, in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking.").

hypothetical person with the claimant's RFC and vocational factors can perform work existing in significant numbers in the national economy.[32]

B. Exertional Level

Social security regulations define five physical exertional levels used to classify jobs: sedentary, light, medium, heavy, and very heavy.[33] As relevant here, a full range of light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds,"[34] and "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."[35] Sedentary work, on the other hand, involves "lifting no more than 10 pounds at a time"[36] and standing or walking for "no more than about 2 hours of an 8-hour workday."[37]

Here, the ALJ found Mr. A. had the RFC to perform less than the full range of light work, but greater than sedentary work. Specifically, he found Mr. A. could perform

---

[32] *See* SSR 83-12, 1983 SSR LEXIS 32, at *5 (Jan. 1, 1983) ("In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, . . . [vocational expert] assistance is advisable."); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist.").

[33] 20 C.F.R. §§ 404.1567, 416.967.

[34] 20 C.F.R. §§ 404.1567(b), 416.967(b).

[35] SSR 83-10, 1983 SSR LEXIS 30, at *14 (Jan. 1, 1983).

[36] 20 C.F.R. §§ 404.1567(a), 416.967(a).

[37] SSR 83-10, 1983 SSR LEXIS 30, at *13.

"light work," except that he could only "be on his feet up to 4 hours per 8 hour shift."[38] As, the ALJ explained, if Mr. A. could perform the full range of light work, the grids would require a finding of "not disabled."[39] But because Mr. A. could not perform the full range of light work, the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual with [Mr. A.'s] age, education, work experience, and residual functional capacity."[40] The vocational expert testified that "given all of these factors the individual would be able to perform" jobs in the national economy, including electronics inspector, electronics worker, and wafer cleaner.[41]

The ALJ's analysis comports with the governing regulations and agency guidance. Where Mr. A.'s RFC fell between two exertional levels, the ALJ permissibly consulted a vocational expert rather than directly applying a grid rule. Mr. A. argues the ALJ instead should have first determined whether his limitations more closely aligned with light work or sedentary work.[42] In support of this argument, he points to Program Operations Manual System (POMS) guidance for using a rule as a framework when

---

38 (Tr. 22.)

39 (Tr. 30); *see also* 20 C.F.R. pt. 404, subpt. P, App. 2 § 202.18 (requiring a finding of "not disabled" for a person with Mr. A.'s age (forty-four), other vocational characteristics (illiterate with semiskilled past work), and an RFC to perform light work).

40 (Tr. 30.)

41 (*Id.*)

42 (*See* Opening Br., Doc. No. 11 at 11–12, 15–18.)

exertional capacity falls between two rules with different conclusions.[43] In this situation, the POMS instructs ALJs to apply the "higher-numbered rule and find the claimant not disabled" if he has a "slightly reduced capacity for the higher level of exertion," or the "lower-numbered rule and find the claimant disabled" if he has a "significantly reduced capacity for the higher level of exertion."[44] According to the POMS, the ALJ may also "use the assistance of a Vocational Specialist to determine which rule most closely approximates the claimant's RFC."[45]

Mr. A.'s reliance on the POMS is unavailing. As an initial matter, given Mr. A.'s age (forty-four) and other vocational factors, the grids direct a finding of "not disabled" regardless of whether Mr. A.'s exertional level was sedentary or light.[46] The grids would only direct a finding of a disability once Mr. A. turned forty-five, if his exertional level were sedentary.[47]

| AGE | RFC | EDUCATION | PAST WORK | CONCLUSION | GRID RULE |
|---|---|---|---|---|---|
| 18–49 | Light | Illiterate | Semi-skilled | Not disabled | 202.18 |
| 18–44 | Sedentary | Illiterate | Semi-skilled | Not disabled | 201.23 |
| 45–49 | Sedentary | Illiterate | Semi-skilled | Disabled | 201.17 |

[43] *See* POMS DI 25025.015, available at https://secure.ssa.gov/poms.nsf/lnx/0425025015 [https://perma.cc/CE66-9Q2E].

[44] POMS DI 25025.015(D).

[45] *Id.*

[46] *See* 20 C.F.R. pt. 404, subpt. P, App. 2 § 202.18 (light exertional level, age 18–49, illiterate, semi-skilled past work); *id.* § 201.23 (sedentary exertional level, age 18–44, illiterate, semi-skilled past work).

[47] *See id.* § 201.17 (sedentary exertional level, age 45–49, illiterate, semi-skilled past work).

In other words, Mr. A.'s argument is premised on the notion that the ALJ should have applied the borderline age rule (addressed further below).

Even assuming Mr. A. fell between two rules directing different conclusions, the ALJ did not err by relying on a vocational expert rather than applying a grid rule at step five. The POMS is nonbinding,[48] and the provision Mr. A. cites only addresses how to choose which rule to use when relying on a grid rule to determine disability. But governing agency guidance does not *require* an ALJ to use a grid rule to determine disability if a claimant's exertional level falls between two rules.[49] Instead, SSR 83-12 provides the following options:

> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> [a]. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to

[48] *See Martinez v. Berryhill*, No. 1:17-cv-00506, 2019 U.S. Dist. LEXIS 50076, at *41 (D.N.M. Mar. 25, 2019) (unpublished) (noting the POMS does "not have the force of law and [is] not binding on the SSA or this Court").

[49] *See* SSR 83-12, 1983 SSR LEXIS 32, at *5–6.

> support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.[50]

Put differently, if a claimant's exertional limitations fall "somewhere 'in the middle,'"[51] an ALJ may rely on a vocational expert in determining whether the claimant can perform work in the national economy. Notably, SSR 83-12 does not require an ALJ to decide which exertional level a claimant's limitations most closely align with before he consults a vocational expert. And Mr. A. cites no controlling authority imposing such a requirement.

Here, the ALJ permissibly relied on vocational expert testimony where Mr. A.'s exertional limitations fell between two levels. The hypothetical question the ALJ posed to the vocational expert included all Mr. A.'s limitations and vocational characteristics. And the expert testified that a person with those limitations and characteristics could perform work in the national economy.[52] This testimony qualifies as substantial evidence supporting the ALJ's step-five conclusion.[53]

---

[50] *Id.*

[51] *Id.*

[52] (*See* Tr. 29–30, 64–70.)

[53] *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

C. Borderline Age

Mr. A. also argues the ALJ should have considered him to be "borderline age" under the grids.[54] Where a "borderline age" classification still would not have resulted in a determination of disability, the ALJ did not err.

Agency regulations define various age categories used for determining disability, but the agency "will not apply the age categories mechanically in a borderline situation."[55] If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] not disabled," the ALJ "will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case."[56]

Mr. A was born on September 12, 1979,[57] making him forty-four years and nine months old at the time of the decision.[58] The ALJ did not address Mr. A.'s borderline age in his decision. But he only needed to consider age if Mr. A would qualify as disabled in the older category. As explained above, if Mr. A. were limited to sedentary work, the grids would have directed a finding of disability at age forty-five.[59] But he was

[54] (Opening Br., Doc. No. 11 at 21–25.)

[55] 20 C.F.R. §§ 404.1563(b), 416.963(b).

[56] 20 C.F.R. §§ 404.1563(b), 416.963(b).

[57] (Tr. 343.)

[58] (*See* Tr. 31 (decision dated June 11, 2024).)

[59] *See* 20 C.F.R. pt. 404, subpt. P, App. 2 § 202.18 (directing a finding of "not disabled" for an individual aged 18–49 with light exertional level and Mr. A.'s other vocational

not. Instead, the ALJ found Mr. A. capable of a reduced range of light work—with standing and walking abilities exceeding those of sedentary work, and no reduction in the lifting/carrying requirements for light work.[60] Where Mr. A. did not fall under a grid rule that would have directed a finding of disability at age forty-five, the ALJ did not err in omitting a discussion of his borderline age.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 21st day of September, 2026.

BY THE COURT:

Daphne A. Oberg

Daphne A. Oberg
United States Magistrate Judge

---

characteristics); *id.* § 201.17 (directing a finding of "disabled" for an individual aged 45–49 with sedentary exertional level and Mr. A.'s other vocational characteristics).

[60] (*See* Tr. 22); 20 C.F.R. §§ 404.1567(a)–(b), 416.967(a)–(b) (defining sedentary and light exertional levels, including lifting and carrying requirements); SSR 83-10, 1983 SSR LEXIS 30, at *13–14 (outlining specific standing and walking requirements for sedentary and light exertional levels).